1  JEFFREY C. HALLAM (State Bar No. 161259)
   E-Mail:      *jhallam@sideman.com*
2  ZACHARY J. ALINDER (State Bar No. 209009)
   E-Mail:      *zalinder@sideman.com*
3  GINA CORTESE (State Bar No. 280674)
   E-Mail:      *gcortese@sideman.com*
4  SIDEMAN & BANCROFT LLP
   One Embarcadero Center, Twenty-Second Floor
5  San Francisco, California 94111-3711
   Telephone:      (415) 392-1960
6  Facsimile:      (415) 392-0827

7  Attorneys for Plaintiffs
   Cisco Systems, Inc. and Cisco Technology, Inc.

8

9            **UNITED STATES DISTRICT COURT**

10          **NORTHERN DISTRICT OF CALIFORNIA**

11

12  CISCO SYSTEMS, INC., a California
    corporation, and CISCO TECHNOLOGY,
13  INC., a California corporation,

14            Plaintiffs,

15       v.

16  CUONG CAO DANG aka CALVIN DANG,
    an individual, NETWORK GENESIS, INC., a
17  California corporation, THE DANG'S
    INVESTMENT, INC., a California
18  Corporation, THE DANG'S INVESTMENT
    GROUP, INC., a California Corporation, ACE
19  LAUNDROMAT, INC., a California
    Corporation, LY THI BE LE, an individual,
20  THE CUONG CAO DANG & LY THI BE LE
    LIVING TRUST, a California trust, LOC
21  XUAN HOANG, an individual, HIEU
    NGUYEN, an individual, and DOES 1 through
22  50, inclusive,

23            Defendants.

24

25

CASE NO.

**COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF FOR:**

1.  **FEDERAL TRADEMARK
    INFRINGEMENT, 15 U.S.C. § 1114;**
2.  **FEDERAL TRADEMARK
    COUNTERFEITING, 15 U.S.C. § 1114;**
3.  **FEDERAL UNFAIR COMPETITION,
    15 U.S.C. § 1125;**
4.  **FEDERAL TRADEMARK DILUTION,
    15 U.S.C. § 1125;**
5.  **VIOLATIONS OF RICO, 18 U.S.C.
    §§ 1961, *et seq.*;**
6.  **CALIFORNIA COMMON LAW
    TRADEMARK INFRINGEMENT AND
    DILUTION;**
7.  **UNFAIR BUSINESS PRACTICES, CAL.
    BUS. & PROF. CODE §§ 14245 & 14247;**
8.  **UNFAIR BUSINESS PRACTICES,
    CAL. BUS. & PROF. CODE §§ 17200,
    *et seq.*; and,**
9.  **ACCOUNTING.**

**Demand for Jury Trial**

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

26

27

28

Case No.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Plaintiffs CISCO SYSTEMS, INC. ("CSI") and CISCO TECHNOLOGY, INC. ("CTI"

2   and together with CSI, "CISCO" or "Plaintiffs"), hereby complain and allege against Cuong Cao

3   Dang, a/k/a "Calvin" Dang ("DANG"), Network Genesis, Inc., The Dang's Investment, Inc., The

4   Dang's Investment Group, Inc., Ace Laundromat, Inc., Ly Thi Be Le, The Cuong Cao Dang & Ly

5   Thi Be Le Living Trust, Loc Xuan Hoang, Hieu Nguyen, and Does 1-50, inclusive (collectively

6   "DEFENDANTS") as follows:

7   ### NATURE OF COMPLAINT

8   1.      This is an action based upon (1) Federal Trademark Infringement, 15 U.S.C. §

9   1114; (2) Federal Trademark Counterfeiting, 15 U.S.C. § 1114; (3) Federal Unfair Competition,

10   15 U.S.C. § 1125; (4) Federal Trademark Dilution, 15 U.S.C. § 1125; (5) Violations of RICO, 18

11   U.S.C. §§ 1961, *et seq*., (6) California Common Law Trademark Infringement and Dilution; (7)

12   California Unfair Business Practices, Cal. Bus. & Prof. Code §§ 14245 & 14247; (8) California

13   Unfair Business Practices, Cal. Bus. & Prof. Code §§ 17200, *et seq*., (9) an Accounting (the

14   "Action").  Through this Action, CISCO seeks full recovery from a counterfeit and stolen goods

15   ring, operating out of San Jose, California, which stole products from CISCO, altered them

16   slightly to conceal their illicit nature, and then resold those products at a huge profit and in direct

17   competition with the true owner, CISCO.

18   ### PARTIES

19   2.      CSI is, and at all times mentioned herein was, a California corporation, with its

20   principal place of business at 170 W. Tasman Dr., San Jose, California 95134.  CTI is, and at all

21   times mentioned herein was, a California corporation with its principal place of business at 170 W.

22   Tasman Dr., San Jose, California 95134.  CTI owns the trademarks that are used by CSI in

23   marketing CISCO-branded products.

24   3.      Defendant DANG was at all relevant times an individual with his principal

25   residence in California.  He was also the owner of Network Genesis, Inc., and conducted business

26   on behalf of Network Genesis, Inc.  At all relevant times, DANG controlled and directed the

27   operations of Network Genesis.

28   4.      Defendant Network Genesis, Inc. ("NGI" or "Network Genesis") at all times

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  mentioned herein, was a California corporation with its principal place of business at 2526 Qume

2  Drive, Suite 19, in San Jose, California.

3       5.     The Dang's Investment, Inc. and The Dang's Investment Group, Inc. (together

4  "TDI") and Ace Laundromat, Inc. are all California corporations located at 2611 Senter Road, San

5  Jose, California.  The primary business of TDI, according to its website, was managing residential

6  and commercial real estate that DANG purchased using profits generated by Network Genesis.  As

7  described further below, those properties were therefore purchased using illicit proceeds from

8  DANG's stolen goods and counterfeiting operations.  CISCO is informed and believes that Ace

9  Laundromat, Inc. was formed using illicit proceeds from the illegal operation described below and

10  was used to help launder money in a way that appeared lawful.

11       6.     At all relevant times, Ly Thi Be Le ("Ly Le") was DANG's wife and was involved

12  in the conduct at issue here, including as trustee to the Cuong Cao Dang & Ly Thi Be Le Living

13  Trust.  The Cuong Cao Dang & Ly Thi Be Le Living Trust is, and at all times mentioned herein,

14  was a California trust.  As described further below, DANG and Ly Le purchased numerous

15  residential and commercial properties using illicit proceeds and later transferred many of those

16  properties to the Cuong Cao Dang & Ly Thi Be Le Living Trust.

17       7.     Plaintiffs are informed and believe, and on that basis allege, that Loc Xuan Hoang

18  and Hieu Nguyen were CISCO employees who sold stolen CISCO merchandise to DANG.

19       8.     The true names and capacities, whether individual, corporate, associate, or

20  otherwise, of the Defendants named herein as DOES 1 through 50, inclusive, are unknown to

21  Plaintiffs who, therefore, sue said Defendants by such fictitious names.  Plaintiffs will amend this

22  Complaint to reflect the true names and capacities of these DOE Defendants when the same shall

23  have been fully and finally ascertained.

24       9.     Plaintiffs are informed and believe, and thereon allege, that each of the Defendants

25  designated herein as a DOE is legally responsible, in some manner, for the events and happenings

26  herein referred to, and legally caused damages to Plaintiffs as herein alleged.

27       10.    At all times relevant to this action, each Defendant, including those fictitiously

28  named Defendants, was the agent, servant, employee, partner, joint venturer, accomplice,

1 conspirator, alter ego or surety of the other Defendants and was acting within the scope of that

2 agency, employment, partnership, venture, or suretyship with the knowledge and consent or

3 ratification of each of the other Defendants in doing the things alleged in this Complaint.

**JURISDICTION**

5       11.    This Court has original subject matter jurisdiction over this action pursuant to 28

6 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121.  This Court has supplemental jurisdiction

7 under 28 U.S.C. §§ 1338(b) and 1367 for all claims in this Complaint that are based upon state law

8 because those claims are part of the same controversy as the claims being made under federal

9 statute.

10       12.    This Court has personal jurisdiction over DEFENDANTS because DEFENDANTS

11 have transacted business within California, and within this district in particular.  DEFENDANTS

12 have also misrepresented the authentic nature of the counterfeit "CISCO" products to residents of

13 California, including within this district.  DEFENDANTS have also stolen goods and otherwise

14 caused tortious injury to CISCO, including to its trademarks, within California, and within this

15 district in particular.

**VENUE**

17       13.    Venue for this action properly lies in the Northern District of California pursuant to

18 28 U.S.C. § 1391(b)(2) because DEFENDANTS committed acts in furtherance of their operation,

19 and a substantial part of the property that is the subject of this action is located within this district.

**INTRA-DISTRICT ASSIGNMENT**

21       14.    In accordance with LR 3-2(c), this action is properly assigned on a District-wide

22 basis because it relates to Intellectual Property

**FACTUAL ALLEGATIONS RELATING TO TRADEMARK REGISTRATIONS**

24       15.    Founded in 1984, CISCO is a global leader in technology, with a large and diverse

25 customer base spanning governments and large enterprises, small to medium sized businesses, and

26 individual consumers.  Among other areas, CISCO's business includes high quality networking

27 and communications technology, including telecommunications networking hardware, advanced

28 telecommunications network design, implementation services, high-end videoconferencing

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1 technology and data center technology, among others.

2     16.     CISCO has developed a strong name and reputation within the trade and among

3 members of the consuming public as a leading manufacturer of mission-critical networking and

4 telecommunications systems, and it sells these products worldwide.  CISCO has invested

5 substantial effort and resources to develop and promote public recognition of the CISCO trade

6 name and of the family of CISCO-related marks.  CISCO has used the family of CISCO

7 trademarks to identify goods and services as being genuine CISCO products, and the CISCO

8 marks and name are well-recognized signifiers of CISCO's high quality products and services (the

9 Cisco marks and name are hereinafter referred to as "Cisco Marks").

10     17.     CTI has caused several Cisco Marks to be registered on the Principal Register of

11 the U.S. Patent and Trademark Office in connection with a range of telecommunications,

12 computer hardware and software products and services, and CTI owns all rights, title, and interest

13 in numerous federal trademark registrations.

| Mark | Registration Number | Registration Date |
|------|---------------------|-------------------|
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO SYSTEMS and Design | 1,999,660 | September 10, 1996 |
| CISCO SYSTEMS and Design | 2,116,358 | November 25, 1997 |
| CISCO SYSTEMS and Design | 2,232,700 | March 16, 1999 |
| CISCO SYSTEMS and Design | 2,488,368 | September 11, 2001 |
| CISCO | 2,498,746 | October 16, 2001 |
| CISCO SYSTEMS and Design | 2,552,361 | March 16, 2002 |
| CISCO SYSTEMS and Design | 2,959,329 | June 7, 2005 |
| CISCO and Design | 3,759,451 | March 9, 2010 |
| CISCO | 3,978,294 | June 14, 2011 |
| CISCO | 4,263,591 | December 25, 2012 |

    18.     CISCO has also expended significant resources and effort to develop and promote

public recognition of the CISCO trade name and the family of CISCO-related marks throughout

the world, in part by placing CISCO Products and Cisco Marks in its advertising and promotional

materials which reach global consumers through a variety of media, including television, radio,

newspapers, magazines, billboards, direct mail, websites, and in telephone directories.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

19.     CISCO has taken substantial steps and expended significant resources to research and develop strict quality-control standards for all of its products to ensure that products and services bearing Cisco Marks continue to be of the highest quality.

20.     As a result of CISCO's extensive advertising and promotional efforts and its continuous use of its core Cisco Marks for more than 25 years, CISCO has attained one of the highest levels of brand recognition.  As a result of CISCO's longstanding and widespread use and promotion of Cisco Marks, CISCO's customers worldwide have come to rely upon Cisco Marks to identify CISCO'S high-quality goods and services.  Many of CISCO's products are purchased by the U.S. Government, including branches of the military, and by other industries, in critical and life-essential applications.

21.     Counterfeit CISCO products may jeopardize the systems into which they are placed because they may not conform with CISCO's design specifications, production standards, or quality control, and thus lack reliability.  Counterfeit products that bear markings similar to Cisco Marks may provide customers with a false assurance that the products they have purchased are reliable and conform with CISCO's high standards.

22.     CISCO's product serial numbers allow CISCO to maintain quality control and product traceability for warranty, service and other business purposes.  Specifically, a CISCO product serial number is typically married to or associated with a myriad of product related components or attributes, *i.e.* label serial number, motherboard serial number, daughter card serial number, power supply serial number, product ID, sales order number, and package ID number.  If the association between these serial numbers is broken, CISCO's quality control and CISCO's production, warranty, and service standards would be compromised.

## FACTUAL ALLEGATIONS

23.     On July 24, 2013, the United States government (the "government") indicted DANG on charges related to the procurement and sale of counterfeit and stolen CISCO products masterminded by DANG in the Northern District of California and elsewhere.  On October 30, 2013, the government returned a superseding indictment against DANG, Emily Le, David Huynh, Loc Xuan Hoang, Hieu Nguyen, Long Pham, Thuy Nguyen, and Edwin Lin.  A true and correct

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  copy of the superseding indictment, now public and obtained from the Court's PACER system, is

2  attached hereto as Exhibit A and is incorporated herein by this reference.  In the superseding

3  indictment, the grand jury charged defendants with 18 U.S.C. § 1349 (conspiracy to commit mail

4  fraud); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) (money

5  laundering); 18 U.S.C. § 1957 (engaging in monetary transactions using criminally deprived

6  property); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. 2461(c) (forfeiture of criminally derived

7  proceeds); 18 U.S.C. § 982(a)(1) (money laundering forfeiture); and 31 U.S.C. § 5317(c)

8  (structuring forfeiture).

9       24.     Prior to charging Defendants, on January 23, 2013, Special Agents with the Internal

10  Revenue Service, Criminal Investigation (IRS-CI), conducted a search of a property belonging to

11  DANG and his wife, Ly Le, located at 2526 Qume Drive, #19 in San Jose, California.  As

12  described in more detail in the affidavits and indictments, the IRS Special Agents seized

13  approximately 200 CISCO products at the Qume Drive property after filing an application for a

14  search warrant on February 16, 2013.  The government provided CISCO with many of these

15  products for purposes of assessing their authenticity.  CISCO brand protection engineers tested at

16  least 126 of these products to determine whether these products were genuine CISCO products or

17  counterfeit goods.  CISCO engineers concluded that many of the products were either altered with

18  a counterfeit serial number, or were altered with an authentic serial number, but not the one

19  assigned to the particular product at the time of manufacturing.  For example, the assessment

20  revealed that item number 13, SPA-2X1GE bearing serial number JAB1001039B, was a CISCO

21  product with an altered older CISCO serial number that was different from the original serial

22  number assigned to the product at manufacturing.  The seized unit was originally manufactured

23  and shipped and billed internally to CSI for its own internal testing and evaluation purposes.  As

24  described in detail in the indictment and affidavits in support, at some time thereafter unknown to

25  CISCO, DANG's accomplices stole the product from CISCO and then fenced it to DANG so that

26  he, and/or those working with him, could change out the serial numbers and resell it at a huge

27  profit.

28       25.     CISCO makes the allegations on information and belief within this Complaint

Case No.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  based on the indictment, the affidavits in support of the indictment and related search warrants

2  procured by government agents, and on the grand jury's finding of probable cause to indict on the

3  aforementioned charges.

4      26.    CISCO is informed and believes, and on that basis alleges, that from no later than

5  January 2006, and continuing through approximately January 23, 2013, DANG, doing business as

6  Network Genesis, (1) bought stolen CISCO products from (now former) CISCO employees,

7  including Loc Xuan Hoang and Hieu Nguyen (2) modified those products to conceal their origin,

8  and (3) then resold those modified CISCO products to end users at a significant profit.

9      27.    CISCO is informed and believes, and on that basis alleges, that Loc Xuan Hoang

10  and Hieu Nguyen were CISCO employees (now former employees), who sold stolen CISCO

11  merchandise to DANG and/or provided other information and services to DANG, in violation of

12  their employment agreements with CISCO.

13      28.    CISCO is informed and believes, and on that basis alleges, that Network Genesis'

14  customers were located primarily in California, but Network Genesis also had customers in several

15  other states.  Network Genesis primarily used Federal Express, a commercial interstate carrier, to

16  ship orders to its customers.

17      29.    CISCO is informed and believes that DEFENDANTS used altered serial numbers

18  on their counterfeit goods to conceal the illicit nature of those goods and prevent CISCO from

19  uncovering their scheme.  Where DEFENDANTS altered the stolen goods to reflect actual CISCO

20  serial numbers taken from different products, Network Genesis' customers may have been able to

21  have their counterfeit goods serviced by CISCO's warranty process without CISCO's awareness

22  that it might have been servicing a counterfeit or stolen product.  Indeed, CISCO may have then

23  been servicing both the genuine product for one customer and the counterfeit product for one of

24  the Network Genesis customers.

25      30.    On information and belief, beginning no later than on or about January 1, 2006, and

26  continuing through January 23, 2013, DANG and his confederates stole, altered and resold CISCO

27  products resulting in profits of at least thirty-seven million dollars.  DANG used this money to

28  purchase at least eleven pieces of real property, five luxury vehicles, jewelry, designer clothing,

and accessories, the value of all of which is estimated, in total, to be $14,670,969. The properties are held under either DANG's name, his name along with other persons or entities, the name of his business, Network Genesis, or under his other business, TDI. The real estate and vehicles owned by DANG have no recorded liens, and almost all of them were paid in full on or about the purchase date.

31.     More specifically, on information and belief, on May 31, 2006, DANG and his wife Ly Le, along with his mother, Jane Mai Pham, purchased real property located at 3016 Beckley Drive in San Jose, California. They purchased the property for $864,500. The closing statement reflects a total consideration of $872,536 paid for the property. In July 2007, Jane Mai Pham granted her ownership in the property to DANG and his wife. The new Grant Deed reflects that property ownership is held by "The Cuong Cao Dang & Ly Thi Be Le Living Trust."

32.     Further, on information and belief, on June 15, 2008, DANG and his wife Ly Le, dba Network Genesis, purchased real property located at 2526 Qume Drive #19 in San Jose, California. The purchase price was $1,193,000. The closing statement reflects a total consideration of $1,196,348 paid for the property. The Grant Deed transferring ownership of the property reflects that the property was held by "Cuong Dang and Ly Le, dba Network Genesis." On July 6, 2007, a new Grant Deed was filed that reflects that property ownership is held by "The Cuong Cao Dang & Ly Thi Be Le Living Trust."

33.     On information and belief, on December 14, 2007, DANG purchased real property located at 3005 Silver Creek Road, # 176 in San Jose, California. The purchase price was $750,000. The closing statement reflects a total consideration of $753,221. DANG purchased it using funds drawn from Network Genesis' account.

34.     On information and belief, on June 27, 2008, DANG, dba Network Genesis, purchased real property located at 2611 Senter Road in San Jose, California. The purchase price was $2,000,000. A Grant Deed transferring ownership of the property reflects that the property is held by "Network Genesis, Inc." For the years 2008, 2009, and 2010, DANG spent over $1,200,000 in construction upgrades to this property using funds drawn from a Network Genesis account.

35.     On information and belief, on April 7, 2010, DANG, dba Network Genesis, purchased real property located at 3151 Senter Road in San Jose, California. The purchase price was $1,775,000. No less than $2,584,554 was invested in the purchase and improvement of this property.

36.     On information and belief, on August 17, 2009, DANG purchased real property located at 1189 S. De Anza Boulevard in San Jose, California. The purchase price was $1,723,149. At least $1,768,149 invested into the purchase and improvement of this property and can be directly traced to Network Genesis.

37.     On information and belief, on August 24, 2009, DANG, dba Network Genesis, purchased property located at 992 Story Road in San Jose, California. The purchase price was $541,000. DANG put $537,153 into escrow. The Grant Deed transferring ownership of the property reflects that the property is owned by "Network Genesis, Inc." and lists 2526 Qume Drive, Suite 19, San Jose, California. The entire $537,153 used to purchase this property can be directly traced to Network Genesis.

38.     On information and belief, on September 11, 2009, DANG and his wife, Ly Le, purchased real property located at 2897 Bouveron Court, San Jose, California. The purchase price was $350,000. DANG deposited a total of $352,000 into escrow. The entire $352,000 used to buy the property can be directly traced to a Network Genesis bank account.

39.     On information and belief, on September 20, 2011, DANG purchased real property located at 1763-1771 Blossom Hill Road in San Jose, California. The purchase price was $2,250,000. The Grant deed transferring ownership of the property reflects that the property is owned by "The Dang Investment, Inc." using the address 2611 Senter Road, San Jose, CA, which is the address of a property owned by Network Genesis.

40.     On information and belief, on February 27, 2012, DANG and his wife, Ly Le, purchased real property located at 3630 Kettman Road in San Jose, California. The purchase price was $1,000,000. DANG deposited a total of $1,007,143 into escrow for this purchase. The entire amount can be traced to a Network Genesis account.

41.     On information and belief, while the government seized certain illicit goods and

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   money from DANG, DANG and his confederates are still profiting from the illegal enterprise by

2   collecting rent and profits from the aforementioned properties.

### FIRST CAUSE OF ACTION

**Federal Trademark Infringement**

*15 U.S.C. § 1114(1)(a)*

6       42.    CISCO incorporates paragraphs 1-41 of this Complaint as if fully set forth herein.

7       43.    CISCO is informed and believes, and on that basis alleges, that DEFENDANTS

8   have used in commerce marks that are confusingly similar to Cisco Marks, in connection with the

9   sale of computer networking and telecommunications equipment, in a manner that is likely to

10  cause confusion, mistake, or to deceive, and to diminish the value of CISCO's property.

11  DEFENDANTS acted without authority in using Cisco Marks.

12      44.    Cisco Marks are registered on the Principal Register of the U.S. Patent and

13  Trademark Office for the same goods or services in connection with those goods or services

14  offered by DEFENDANTS.

15      45.    DEFENDANTS are not, and have never been, authorized by CISCO to use Cisco

16  Marks on or in connection with the goods or services DEFENDANTS are alleged to have sold.

17  Defendants' unauthorized use of CISCO's Marks falsely represents DEFENDANTS' counterfeit

18  products as emanating from or being authorized by CISCO, and places beyond CISCO's control

19  the quality of products bearing Cisco Marks.

20      46.    As a result of DEFENDANTS' unauthorized use of CISCO's federally registered

21  marks and/or imitations thereof, the public is likely to believe that CISCO approved of Network

22  Genesis as a distributor of CISCO goods.  Furthermore, the public is likely to believe that CISCO

23  maintained control of the goods.

24      47.    CISCO alleges on information and belief that DEFENDANTS' infringing actions

25  were committed fraudulently, willfully, and in bad faith, with knowledge of CISCO's exclusive

26  rights to, and goodwill in, the Cisco Marks and CISCO's property interests in those Marks, or with

27  willful blindness to the same, and with the intent to cause confusion, to cause mistake and/or to

28  deceive.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

48.     As a result of DEFENDANTS' trademark infringement, CISCO has suffered and will continue to suffer substantial and irreparable injury, loss, property damage, and damages to its rights in and to Cisco Marks, and the goodwill associated therewith, for which CISCO has no adequate remedy at law.

49.     Due to the acts of the DEFENDANTS, CISCO has suffered and will continue to suffer loss of income, profits, and valuable business opportunities and value of property, and, if not restrained, DEFENDANTS will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of its acts of infringement.

50.     As the acts alleged herein constitute infringement of Cisco Marks under 15 U.S.C. § 1114, CISCO is entitled to monetary damages and other remedies as provided by 15 U.S.C. §§ 1116, 1117, and 1118, including but not limited to treble damages, reasonable attorney's fees, costs, prejudgment interest, and/or statutory damages.

## SECOND CAUSE OF ACTION

### Counterfeit of Registered Trademark

### *15 U.S.C.§ 1114(1)(b)*

51.     CISCO incorporates paragraphs 1-50 of this Complaint as if fully set forth herein.

52.     CISCO is informed and believes, and on that basis alleges, that DEFENDANTS offered for sale, sold, or distributed goods or services that bore marks that are non-genuine, which are identical with, or substantially indistinguishable from, CISCO's registered Cisco Marks.

53.     The alteration of the serial number on DEFENDANTS' counterfeit "CISCO" products is likely to confuse the public to believe that CISCO authorized Network Genesis to distribute its products and that the product was a genuine, unaltered product.  This also substantially interferes with CISCO's quality control with respect to such products.  As such, the alteration of the serial number on DEFENDANTS' counterfeit "CISCO" products render them materially different from CISCO's products authorized for sale in the U.S.

54.     Cisco Marks are registered on the Principal Register of the U.S. Patent and Trademark Office for the same goods or services in connection with those goods or services offered by DEFENDANTS.

55.    DEFENDANTS are not, and have never been, authorized by CISCO to use Cisco Marks on or in connection with the goods or services DEFENDANTS are alleged to have sold.

56.    DEFENDANTS have therefore used a counterfeit mark, as defined under 15 U.S.C. § 1116(d) and/or 15 U.S.C. § 1127, in connection with the sale, offering for sale, or distribution of goods or services in violation of 15 U.S.C. § 1114(1).

57.    DEFENDANTS' use of counterfeit Cisco Marks results in substantial injury, loss, property damage, and damages to CISCO's rights in and to Cisco Marks, and the goodwill associated therewith.

58.    These infringing acts have occurred within California and in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to CISCO, for which CISCO has no adequate remedy at law.

59.    As the acts alleged herein constitute counterfeiting and infringement of Cisco Marks under 15 U.S.C. § 1114, CISCO is entitled to monetary damages and other remedies as provided by 15 U.S.C. §§ 1116, 1117, and 1118, including but not limited to treble damages, reasonable attorney's fees, costs and prejudgment interest, and/or statutory damages.

### THIRD CAUSE OF ACTION

### Federal Unfair Competition

### *15 U.S.C.§ 1125(a)*

60.    CISCO incorporates paragraphs 1-59 of this Complaint as if fully set forth herein.

61.    DEFENDANTS did, without authorization, make false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which were and are likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of DEFENDANTS with CISCO, and/or as to the origin, sponsorship, or approval of the DEFENDANTS' goods or services, or commercial activities.

62.    CISCO alleges on information and belief that DEFENDANTS' acts have been committed with knowledge of CISCO's exclusive rights and goodwill in Cisco Marks, as well as with bad faith and the intent to cause confusion, mistake and/or to deceive.

63.    DEFENDANTS' unauthorized use of counterfeit copies of Cisco's Marks falsely

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  represents DEFENDANTS' counterfeit "CISCO" products as emanating from, or being authorized

2  by, Plaintiffs and places beyond Plaintiffs' control the quality of products bearing Cisco Marks.

3       64.    CISCO has suffered, and if DEFENDANTS are not enjoined from their wrongful

4  acts of passing off and acts of making false designations or origin, false or misleading descriptions

5  of fact, and false or misleading representations of fact as described herein, will continue to suffer,

6  great and irreparable injury, loss, and damages to its rights in and to Cisco Marks and the goodwill

7  associated therewith, for which it has no adequate remedy at law.

8       65.    As a result of the DEFENDANTS' wrongful acts, CISCO has suffered and will

9  continue to suffer loss of income, profits, and valuable business opportunities, and, if not

10 restrained, DEFENDANTS will have unfairly derived and will continue to unfairly derive income,

11 profits and business opportunities as a result of its wrongful acts.

12      66.    As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. §

13 1125(a), CISCO is entitled to monetary damages, and other remedies provided by 15 U.S.C. §§

14 1116, 1117, and 1118, including but not limited to treble damages, reasonable attorney's fees,

15 costs and prejudgment interest, and/or statutory damages.

16                  **FOURTH CAUSE OF ACTION**

17                  **Federal Trademark Dilution**

18                  ***15 U.S.C. § 1125(c)***

19      67.    CISCO incorporates paragraphs 1-66 of this Complaint as if fully set forth herein.

20      68.    Cisco Marks are extraordinarily famous and well known throughout the United

21 States, having been used exclusively and extensively for many years.  By reason of extensive

22 advertising and use, Cisco Marks have become highly distinctive of  Cisco's goods and are

23 uniquely associated with CISCO.

24      69.    CISCO is informed and believes, and on that basis alleges, that DEFENDANTS'

25 commercial use of Cisco Marks on its counterfeit "CISCO" products has diluted and continues to

26 dilute the distinctive quality of Cisco Marks by lessening their capacity to identify and distinguish

27 CISCO exclusively as the source of goods bearing or provided under the Marks.

28      70.    DEFENDANTS' commercial use of Cisco Marks further dilutes Cisco Marks by

1  associating them with a product of inferior quality, thereby tarnishing the Marks. For example,

2  when customers expend money in exchange for CISCO products, part of the consideration they

3  bargain for is the authenticity of the product and retailer. When CISCO products are sold in

4  packaging not used by CISCO, or when a product fails due to the unauthorized distributor's

5  handling of the product, the customers mistakenly associate the inferior product with CISCO's

6  control over its product.

7      71.     DEFENDANTS' unlawful use of Cisco Marks is intended to, and has the effect of,

8  trading on CISCO's reputation and causing dilution of Cisco Marks.

9      72.     Upon information and belief, DEFENDANTS do not own any federal or state

10  registrations or trademark applications for any mark that includes, in whole or in part, CISCO or

11  CTI and cannot assert any rights in CISCO or CTI that are prior to CISCO's or CTI's first use of

12  either mark.

13      73.     DEFENDANTS' conduct is in violation of Section 43(c) of the Lanham Act, 15

14  U.S.C. §1125(c).

15      74.     DEFENDANTS' aforesaid conduct is causing immediate and irreparable injury to

16  CISCO and to CISCO's goodwill and reputation, and will continue to damage CISCO unless

17  enjoined by this Court. CISCO has no adequate remedy at law. In addition, as DEFENDANTS

18  herein willfully intended to trade on the recognition of the famous Cisco Marks, CISCO will seek

19  any other remedies it is entitled to under 15 U.S.C. §§ 1117(a), and 1118.

20              **FIFTH CAUSE OF ACTION**

21              **Violations of RICO**

22              ***18 U.S.C. §§ 1961, et seq.***

23      75.     CISCO incorporates paragraphs 1-74 of this Complaint as if fully set forth herein.

24      76.     CISCO is informed and believes, and on that basis alleges, that between January

25  2006 and January 23, 2013, Network Genesis was an enterprise engaged in selling modified

26  counterfeit and stolen CISCO products.

27      77.     DEFENDANTS were employed by, or associated with, Network Genesis, which

28  conducted or participated in activities that affected interstate commerce. CISCO is informed and

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  believes, and on that basis alleges, that Network Genesis' customers were located primarily in

2  Southern California, but Network Genesis also had customers in several other states.  Network

3  Genesis primarily used Federal Express, a commercial interstate carrier, to ship orders to its

4  customers.

5        78.     On information and belief, CISCO alleges that DEFENDANTS conducted said

6  activities through a pattern of racketeering activity to transport, deliver and sell counterfeit and

7  stolen CISCO products.  By doing so, DEFENDANTS knowingly and willfully committed acts

8  and conspired to commit acts in violation of 18 U.S.C. § 1962 (c) and (d).

9        79.     Based on the probable cause found in the criminal indictment, the "predicate acts"

10  which constitute the alleged "pattern of racketeering activity" pursuant to 18 U.S.C. § 1961(5)

11  involve two categories of "racketeering activity" set out in 18 U.S.C. § 1961(1): (1) "act[s] ...

12  indictable under ... title 18, United States Code: section 1341 (relating to mail fraud); and (2)

13  act[s] ... indictable under ...section 1956 (relating to the laundering of monetary instruments)."

14        80.     As a direct and proximate result of DEFENDANTS' activities, CISCO has suffered

15  substantial loss and damages to their property.  This loss entitles CISCO to recover treble damages

16  against Defendants and costs of suit, including reasonable attorney's fees, pursuant to 18 U.S.C. §

17  1964(c).

18                    <u>**SIXTH CAUSE OF ACTION**</u>

19              **Trademark Infringement and Dilution**

20                  ***California Common Law***

21        81.     CISCO incorporates paragraphs 1-80 above as if set forth fully herein.

22        82.     DEFENDANTS' continued use of Cisco Marks without CISCO's consent and

23  and/or causing, inducing, or materially contributing to such use, constitutes trademark

24  infringement under California common law.

25        83.     Irreparable harm to CISCO is imminent as a result of DEFENDANTS' conduct,

26  and CISCO is without an adequate remedy at law. CISCO is thus entitled to an injunction

27  restraining Defendants, their officers, directors, agents, employees, representatives and all other

28  persons acting in concert with them, from engaging in further such infringing acts.

84.     DEFENDANTS' acts were done intentionally and with knowledge of CISCO's rights, and thus constitute deliberate and willful-infringement.

85.     As a result of this trademark infringement, CISCO has sustained, and continues to sustain, damages in an amount to be determined at trial, plus interest, costs and attorney's fees.

### SEVENTH CAUSE OF ACTION

**Unfair Business Practices, Trademark Infringement and Dilution**

*Violation of California Business and Professions Code §§ 14245 & 14247*

86.     CISCO incorporates paragraphs 1-85 above as if set forth fully herein.

87.     DEFENDANTS have used, reproduced, and/or knowingly facilitated the use or reproduction of the Cisco Marks in connection with the sale or advertising of counterfeit and stolen CISCO products, without the consent of CISCO.

88.     DEFENDANTS began using counterfeit and confusingly similar versions of the Cisco Marks after they achieved their distinctive and famous status.  The Cisco Marks are famous and distinctive in the State of California by virtue of their inherent and acquired distinctiveness and extensive, exclusive use.  DEFENDANTS' conduct constitutes dilution of the Cisco Marks in violation of California Business & Professions Code §§14245 and 14247.  DEFENDANTS' conduct, in violation of California Business and Professions Code §§ 14245 and 14247 has also caused, or is likely to cause, public confusion, deception, mistake and infringes CISCO's rights, including its trademark and good will associated with it.

89.     DEFENDANTS' conduct constitutes dilution of the Cisco Marks in violation of California Business & Professions Code §§14245 and 14247.  The harm to CISCO as a result of DEFENDANTS' conduct is irreparable, and CISCO is without an adequate remedy at law. CISCO is thus entitled to an injunction restraining DEFENDANTS, their officers, directors, agents, employees, representatives and all other persons acting in concert with them, from engaging in further such unlawful acts.

90.     As a result of DEFENDANTS' actions, CISCO has sustained, and is continuing to sustain, damages in an amount to be determined at trial, including under California Business & Professions Code §§14250(a), plus interest, costs and attorney's fees.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

## EIGHTH CAUSE OF ACTION

2

### Unfair Business Practices

3

#### *California Business and Professions Code §§ 17200, et seq.*

4    91.    CISCO incorporates paragraphs 1-90 of this Complaint as if fully set forth herein.

5    92.    California Business and Professions Code §§ 17200, *et seq.*, prohibits acts of unfair

6 competition, which means and includes any "unlawful, unfair or fraudulent business act or

7 practice."

8    93.    On information and belief based on the criminal indictment and search warrant

9 affidavits, in pursuing the above-described schemes, DEFENDANTS engaged in unlawful

10 business acts or practices by committing the above described acts, including violation of 18 U.S.C.

11 § 1349 (conspiracy to commit mail fraud); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. §

12 1956(a)(1)(A)(i) and (a)(1)(B)(i) (money laundering); 18 U.S.C. § 1957 (engaging in monetary

13 transactions using criminally deprived property); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. 2461(c)

14 (forfeiture of criminally derived proceeds); 18 U.S.C. § 982(a)(1) (money laundering forfeiture);

15 and 31 U.S.C. § 5317(c) (structuring forfeiture)**,** and the other acts and practices alleged herein, in

16 an effort to gain unfair competitive advantage and a windfall in the marketplace.

17    94.    CISCO alleges upon information and belief that DEFENDANTS continuously

18 obtained CISCO products through theft and/or conversion and then altered and sold those

19 fraudulently obtained products.

20    95.    CISCO alleges upon information and belief that DEFENDANTS' practices were

21 unlawful, unfair, and/or fraudulent, and constitute unlawful, unfair, and/or fraudulent competition

22 as defined by California Business and Professions Code §§ 17200, *et seq.*

23    96.    CISCO seeks full restitution by DEFENDANTS, as necessary and according to

24 proof, to restore any and all property and monies, including interest, acquired by DEFENDANTS,

25 and all costs caused to Plaintiffs as a result of DEFENDANTS' unfair business practices.

26    97.    DEFENDANTS' actions have caused and, unless restrained by this Court, will

27 continue to cause irreparable injury to CISCO, unless enjoined.  CISCO has no adequate remedy

28 at law for DEFENDANTS' unfair competition and business practices.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## NINTH CAUSE OF ACTION

### Accounting

### *California Common Law*

98.     CISCO incorporates paragraphs 1-97 of this Complaint as if set forth fully herein.

99.     CISCO is entitled, including but limited to pursuant to 15 U.S.C. § 1117, to recover any and all profits of DEFENDANTS that are attributable to DEFENDANTS' acts of infringement.

100.    CISCO is entitled, including but limited to pursuant to 15 U.S.C. § 1117, to actual damages or statutory damages sustained by virtue of DEFENDANTS' acts of infringement.

101.    DEFENDANTS have received large amounts of money as a result of their misconduct, at CISCO's expense, and that such money is rightfully due to CISCO.  The amount of money due from DEFENDANTS to CISCO is unknown to CISCO and cannot be ascertained without a detailed accounting by DEFENDANTS of the precise number of units of infringing material and price thereof offered for distribution and sale and actually distributed and sold by DEFENDANTS.

## PRAYER FOR RELIEF

WHEREFORE CISCO respectfully prays that the Court enter judgment as follows:

1.      That DEFENDANTS directly infringed and counterfeited the Cisco Marks, and engaged in unfair competition through use of their counterfeit and/or infringing marks;

2.      That DEFENDANTS' trademark infringement and counterfeiting were knowing and willful and committed with bad faith and intent to deceive and that this case is exceptional under 15 U.S.C. § 1117(a);

3.      That the Court enter an order freezing the DEFENDANTS' assets, specifically declaring that DEFENDANTS hold in trust, as constructive trustees for the benefit of Plaintiffs, the ill-gotten gains obtained from the sale of counterfeit and stolen CISCO products, and all additional property and money purchased or obtained as a result of the ill-gotten gains;

4.      That the Court appoint a receiver to collect rents and profits from the real properties, both commercial and residential, that were purchased by DEFENDANTS using the ill-

1  gotten gains obtained from the sale of counterfeit and stolen CISCO products, so that they may be

2  preserved during the pendency of this action;

3      5.      That Plaintiffs be awarded actual damages and DEFENDANTS' profits;

4      6.      That Plaintiffs be awarded statutory damages;

5      7.      That Plaintiffs be awarded prejudgment interest;

6      8.      That Plaintiffs be awarded reasonable attorneys' fees;

7      9.      That Plaintiffs be awarded treble damages;

8      10.     That DEFENDANTS be required to account to Plaintiffs for all profits and

9  damages resulting from DEFENDANTS' infringing activities and that the award be increased as

10 provided for under 15 U.S.C. § 1117;

11     11.     That Plaintiffs be awarded full restitution, including but not limited to wrongful

12 profits and actual gains;

13     12.     That Plaintiffs be awarded punitive and exemplary damages;

14     13.     That Plaintiffs be awarded the costs of prosecuting this claim;

15     14.     That Plaintiffs be awarded injunctive and provisional remedies, as appropriate, as

16 well as an accounting; and,

17     15.     That Plaintiffs be granted such other and further relief as the Court deems just and

18 proper.

19

20 DATED: April 17, 2014                 SIDEMAN & BANCROFT LLP

21

22                          By:    _____/s/ Zachary J. Alinder_____

23                                       Zachary J. Alinder
                                     *Attorneys for Plaintiffs*
24                                   CISCO SYSTEMS, INC. and CISCO
                                     TECHNOLOGY, INC.

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### JURY DEMAND

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiffs CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC. hereby demand trial by a jury on all issues herein so triable.

DATED: April 17, 2014                    SIDEMAN & BANCROFT LLP


By:  _____/s/ Zachary J. Alinder_____
                    Zachary J. Alinder
                    *Attorneys for Plaintiffs*
          CISCO SYSTEMS, INC. and CISCO
                    TECHNOLOGY, INC.